[Civ. No. 3399. Third Appellate District.—February 17, 1928.]

GEORGE N. HILLWIG, Appellant, v. J. F. BOYER et al., Respondents.

Samuel W. Newman for Appellant.

G. C. DeGarmo and H. B. Cornell for Respondents.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment in favor of respondents in a suit to recover an alleged balance of proceeds of a sale of real property belonging to appellant, but which land was conveyed to respondent Boyer, and held by him as security for the payment of a debt. The action is based upon a charge of fraud and conspiracy on the part of respondents.

December 1, 1920, appellant was the owner of lot 15, block "B" of Walsh Estate Tract, and lot 5, block 2, of Rowen's Tract in the city of Los Angeles, known as the San Julian property. The respondents George C. and Rosa Fetterman were husband and wife. Appellant was indebted to the respondent Boyer, and as security for the payment of this debt, on December 6, 1918, he executed and delivered to Boyer a deed of conveyance to the San Julian lots, together with other Los Angeles property. The lots involved in this appeal were then subject to a mortgage of $8,500 held by one Taylor. December 1, 1920, these lots were sold by respond-

ent Boyer and conveyed to respondents Fetterman, in consideration of the sum of $2,000, the grantees assuming the payment of the mortgage together with accumulated interest. Without knowledge on the part of respondent Boyer these lots were subsequently resold to one Van Geisling at a profit of some $3,000. Boyer was not a party to this sale, and received none of the proceeds therefrom. In a suit for money had and received, previously filed against Boyer by this appellant in April, 1921, affecting the same property involved in the present case, this appellant recovered a judgment for $3,864.92. The amount of this judgment was ascertained by deducting $18,530.14, which was found to be the total amount of indebtedness due to Boyer, from the total receipts from the income, interest and proceeds of sales of appellant's said properties. This judgment included the item of $2,000 received by Boyer upon the sale of the San Julian lots involved in this appeal. In the former appeal it was determined that the deeds to respondent Boyer were mere mortgages for the security of the debt due to him from Hillwig. This judgment was affirmed since the trial of the present case. (*Hillwig* v. *Boyer*, 81 Cal. App. 763 [254 Pac. 662].)

When the present case was called for hearing the appellant moved for a delay of the trial until the former case had been determined on appeal, asserting that it was material to the issues of this case that the former judgment should first become final as to the character of the deeds to the property here involved, which were held by the respondent Boyer. The subsequent affirmation of the judgment in the former action has conclusively established the fact that these deeds were mere mortgages held by Boyer for the security of the debt due to him, and that the property was therefore held by him in trust. The motion for a continuance was denied.

Upon the trial, in addition to other testimony, the judgment-roll and all the evidence adduced at the former trial was received by consent and considered in the determination of this cause. Appellant's theory of this case is that Boyer is liable for the full market value of the San Julian lots sold by him in violation of his trust, and that the respondents Fetterman are also liable for the full market value of

the land, regardless of the price actually received by Boyer, because, it is asserted, they had knowledge of the trust relationship in which Boyer held the land.

Appellant contends that (1) the trial court erred in refusing to grant his motion for a continuance; (2) that the court failed to find upon the material issue as to whether Boyer held said property in trust, or, upon the contrary, was the legal owner thereof; and (3) that the findings and judgment are not supported by the evidence.

The trial court found that no conspiracy with relation to the sale of the real property existed between any of the respondents; that the respondent Boyer, in good faith sold and conveyed the San Julian lots to the respondents Fetterman for the sum of $2,000, and no more; that thereafter the respondents Fetterman resold the property to one Van Geisling, but that this sale was negotiated without the knowledge of Boyer, who obtained no part of the consideration for the last-mentioned sale, and that none of the respondents received or held any money or property belonging to the appellant, except the $2,000 which was merged in the judgment in the former action, and which sum is thereby secured to appellant.

It is true that the court failed to specifically find that Boyer held the property as a mere trustee, and not as the legal owner thereof. But under the evidence adduced this failure could in no way alter the judgment which was actually entered. Treating the respondent Boyer as a mere trustee of the property involved in this action, the judgment in favor of respondents is nevertheless supported by the evidence. ██ A failure on the part of the trial court to find upon a material issue is reversible error. ██ But when no substantial rights of the appellant are prejudiced by a failure to find upon some particular issue, or when the judgment would not be affected thereby, its omission will be harmless, and under such circumstances the judgment will not be disturbed. (2 Cal. Jur. 1032, sec. 614.)

In the present case, unless the evidence shows either that a conspiracy existed between the respondents by means of which the appellant was defrauded of a part of the purchase price of his land, or that respondents Fetterman knew of the fact that Boyer merely held the San Julian lots in trust

without the power to sell them, and profited by the purchase of the property, it would not matter whether the trial court found that these lots were held in trust, or not, and the omission to find on that particular subject would therefore be harmless.

In spite of the fact that the entire evidence adduced at the former trial was admitted on the trial of the present case, appellant quotes at length from the trial judge's remarks in support of his assertion that the evidence at the former trial was not considered in determining the instant case. Appellant intimates that if the trial judge had considered the evidence offered at the former trial, his judgment in this case must of necessity have been favorable to him. In this belief the appellant is mistaken, for at the conclusion of the arguments the trial judge said: "I will reserve my decision. I will mark the matter submitted, and will read that (the testimony taken at the former trial) if you will permit me to have one of your copies, and I will read that before giving final judgment."

The evidence amply supports the court's conclusions to the effect that no conspiracy existed between the respondents with relation to the sale of the real property; that the respondents Fetterman bought the property without knowledge of the trust relation in which Boyer held the property; that the respondent Boyer sold the property in good faith for the best market price which he was able to obtain, and that he received from the proceeds of said sale no more than $2,000 above the mortgage lien, which was fully accounted for and charged to him in the judgment procured in the former action.

To charge the respondents Fetterman with knowledge of the trust relationship in which the property was held by Boyer, the appellant relies on the following testimony of George C. Fetterman: "I think he (Boyer) told me that Mr. Hillwig owed him a lot of money, and that if he would pay him back . . . he could have his property. . . . In that deal I was regarding Mr. Boyer as the owner of the property. He said that Mr. Hillwig owed him a lot of money *and he was holding his property as security,* or something like that. I never paid no attention to it. Q. Well, at this very time you considered Mr. Boyer the owner of the prop-

erty? A. Mr. Boyer told me he owned it, and I knew he owned it." A fair construction of the foregoing testimony will sufficiently support the assumption that Fetterman believed that Boyer owned the property and had a right to dispose of it, in spite of the fact that he said Boyer told him Hillwig owed him a lot of money and that he was "holding his property as security, or something like that." Evidently this statement did not greatly impress him, for he adds: "I never paid no attention to it." Moreover, Mr. Boyer was afterward called and testified: "I never told Mr. Fetterman that Mr. Hillwig owed me a lot of money, and never discussed with him my relations with Mr. Hillwig in any way." ▮ The foregoing record is therefore not sufficient upon which to upset findings of the court to the effect that Fetterman was unaware of the trust relationship in which the property was actually held by Boyer.

With relation to respondents' negotiations for the sale of the property in question, Mr. Boyer testified: "I first met Mr. Fetterman in October, 1920. . . . Q. What did you get for the San Julian property? A. $2000. Q. Did you get anything else? A. No. . . . Q. Did you have anything to do with Mr. Van Geisling? A. No. Q. Did you have any interest of any kind, or anything, or any consideration moving from Mr. Van Geisling to Mr. Fetterman? A. None whatever. Q. Did you and Mr. Fetterman have any understanding, or agreement of any kind that you were to get . . . more than $2000 for that property? A. No sir. . . . What I meant to make clear (was that) . . . this deal was made for $2000, no security,—but just $2000, which is all that was paid. . . . Q. What in your opinion was the value of the property at the time it was sold to Mr. Fetterman? A. What I sold it for. . . . ($2000. That was) the best offer I ever had. . . . Q. State it (the value) in dollars and cents. A. At the time I gave him an option (it was) $11,000. Q. What were the encumbrances? A. I think it was $8500 mortgage, and possibly some taxes and interest. Q. Bringing it up to how much? A. I would say between $9000 and $9500,—I can't remember exactly. Q. How long a period had you been trying to sell the property? A. About two years."

Upon the same subject matter Mr. Fetterman testified: ''Did you have a conversation with him (Mr. Hillwig) at the time of going into the escrow (for the purchase of the San Julian property)? A. Yes, sir. . . . That was in August, 1920. . . . I never met him after that. . . . Mr. Boyer came to my office . . . and wanted to sell that piece of land. . . . Q. Now you finally went into the escrow . . . with Mr. Boyer? A. Yes. Q. How many parties were there in that escrow? A. Nobody but me and Mr. Boyer. Q. Now wasn't there anybody else,—another party? A. Later on, we made it to—someone,—that is later. Q. Who was the third party? A. Van Geisling. Q. Did Mr. Boyer have anything to do with any deal between you and Mr. Van Geisling? A. No sir, none whatever. Q. Did Mr. Boyer know Van Geisling, or have anything to do with him in that connection? A. No sir, I don't believe that Boyer knew anything about the contract between me and Mr. Van Geisling, for I didn't tell him. . . . Q. How much did Mr. Boyer get out of that deal? A. Well, I paid him $2000, and had to put up all the back interest, taxes, etc. . . . Q. Did you pay Mr. Boyer more than $2000? A. I did not. . . . Q. Did you and Mr. Boyer have any side agreement or any conversation about anything more that was to be paid him, or anything else that was to be given him? A. No sir. . . . Q. Did Mr. Boyer receive any part of the consideration directly or indirectly that you got for the property when you sold it to Mr. Van Geisling? A. No sir, (I) never even discussed it or talked with him about it. He didn't know anything about it, as far as I know, I never told him. . . . Q. What did you get from Mr. Van Geisling when you sold the property to him? A. I got $3,000, and some lots in Yonkers, New York. . . . I got $2100 for these lots, but had to pay back taxes, sewer, street assessments, etc. . . . Q. Mr. Fetterman, you never had any talk with Mr. Hillwig about his relations (with Mr. Boyer) did you? A. No sir. Q. You are absolutely sure of that? A. Yes sir.''

From the foregoing testimony it sufficiently appears that the respondents Fetterman negotiated an independent sale of the real property, without knowledge of the trust relationship between the legal owner thereof and Boyer; that they were in no way implicated in any fraud or con-

spiracy with relation thereto, and that the court therefore properly awarded judgment in their favor. ▉ A *bona fide* purchaser of property from a trustee, without notice, is not liable to the owner for a breach of the trust. (2 Perry on Trusts, 6th ed., p. 1342, sec. 815; p. 1369, sec. 830.)

▉ It also sufficiently appears that the respondent Boyer was in no way implicated or interested in the sale of said real property to Van Geisling, and obtained none of the consideration therefor; that his previous sale to Fetterman was in good faith, free from fraud, and for the highest market value which he was able to procure. In fact, there is some evidence to indicate that he did in fact sell the property for market value, for he testified: "Q. What in your opinion was the value of the property at the time you sold it to Mr. Fetterman? A. What I sold it for. That was the best offer I had ever had. Q. State it (the value) in dollars and cents. A. I gave him an option for $11,000. Q. What were the encumbrances? A. $9000 or $9500." By the weight of authority, it has been held that: "Where lands were sold in breach of trust . . . their value at the time of the sale has been fixed upon as the sum to be accounted for." (2 Perry on Trusts, 6th ed., 1387, sec. 147.) The record discloses the fact that the interest which was paid to the mortgagee, Mr. Taylor, was $779. Thus it appears that Mr. Boyer obtained $2,000 plus $9,779, the amount of the mortgage and accrued interest, for the property, which was in excess of the $11,000 which he fixed as the market value. It is true that the purchaser Fetterman was more fortunate in securing a sale at a further profit of about $3,000. But in the absence of fraud, if Boyer in the exercise of his best judgment, with reasonable efforts to procure a purchaser, succeeded in obtaining not more than $2,000 in excess of the mortgage lien, he can be held liable for no more than the price for which the property sold. In 39 Cyc. 364c it is said: "A trustee who has made a wrongful sale is liable to account for the real value of the property, instead of the price at which it was sold; but this personal liability for the difference does not attach where he has acted in good faith and according to the best of his judgment."

▉ Since the entire evidence and judgment-roll in the former action were received and considered in the present case, it must be assumed that the trial judge in this case

accepted the theory disclosed by the former judgment, that Boyer held the property in question as a trustee. But since it was found in the present case, that upon sale of the San Julian lots, Boyer received only the $2000 with which he was charged in the former judgment, and held no money or property belonging to the appellant, and that no fraud, conspiracy, or lack of good faith was shown, it would be immaterial whether he held the property as a trustee or not. Under such circumstances the refusal to continue the trial until the former judgment became final, was harmless.

The record fails to disclose any proceeds of sale of said real property in the hands of respondents which belongs to the appellant, except the $2,000 for which appellant now holds a separate valid judgment.

The judgment is therefore affirmed.

Hart, J., and Finch, P. J., concurred.