OPP, Appellant, *v.* BOGGS, et ux., Respondents.

No. 8758

Submitted January 27, 1948. Decided March 4, 1948.

193 Pac. (2d) 379.

132

Mr. S. P. Wilson, of Deer Lodge, and Mr. R. E. McHugh, of Anaconda, for appellant. Mr. McHugh argued the cause orally.

Mr. Earle N. Genzberger, of Butte, for respondents. Mr. Genzberger argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action involves the ownership of residence property located at 701 Cherry Street in Anaconda. Plaintiff and defendant, Catherine Boggs, are sisters, and William H. Boggs is the husband of Catherine.

The property was first transferred by Charles Dalberg and wife to this plaintiff by deed which was recorded July 19, 1921.

On November 18, 1924, plaintiff deeded the property to her mother, Lenora Leahy, which deed was recorded on November 19, 1924. The complaint alleges that this deed was without consideration, and it was agreed that the conveyance was merely

intended to make Lenora Leahy a trustee to hold the legal title for the use and benefit of plaintiff and that defendants had knowledge that Lenora Leahy held the legal title only as trustee for plaintiff.

The complaint sets forth that on February 22, 1928, Lenora Leahy conveyed the property to the defendant Catherine Boggs (then Catherine Moore) without consideration, both parties having full knowledge of the actual ownership by plaintiff, and that it was agreed that Catherine held the property as trustee for plaintiff and that she promised and agreed to hold the title as trustee for plaintiff who was the actual owner of the property.

On December 3, 1942, a deed from Catherine to William H. Boggs was placed on record and it is alleged that since the time of the recording of that deed defendants wrongfully and unlawfully repudiated and denied plaintiff's ownership and asserted ownership in William H. Boggs.

The complaint alleges that the deed from Catherine to William H. Boggs was without consideration and intended to defraud plaintiff out of her ownership of the property; that both defendants knew that the property belonged to plaintiff and that Catherine held the legal title only as trustee for plaintiff. The complaint seeks to have that deed cancelled and annulled and that plaintiff be adjudged the owner of the property; that defendants be required to release and quitclaim to plaintiff all claim by them to the property.

The answer admits that plaintiff obtained a deed from Dalberg and wife in July 1921; it alleges that Eugene Miller paid the consideration for the deed and that plaintiff held the property as trustee for Eugene Miller and that the property was "designated" for the use and benefit of Lenora Leahy and Catherine Boggs as their home and that plaintiff never was the actual owner of the property. It admits that on November 18, 1924, plaintiff deeded the property to Lenora Leahy and alleges that she did so at the request and order of Eugene Miller who was then the actual and beneficial owner of the property. The answer admits the making of the deed by Lenora Leahy to de-

fendant Catherine Boggs on February 23, 1928, and alleges that it was made for a valuable consideration.

The answer admits the making of the deed by Catherine to her husband William H. Boggs and denies the other allegations of the complaint. It asserts by way of affirmative defense that the cause of action is barred by limitations and one affirmative defense raises the question of estoppel.

The reply put in issue the affirmative allegations of the answer. The court found that Dalberg and wife conveyed the property in question to plaintiff on July 21, 1921, and that Eugene Miller paid the consideration for the property; that plaintiff conveyed the land to her mother on November 18, 1924, as a gift, but not in trust; that plaintiff thereafter made no demand from her mother to reconvey the property back to her; that on February 23, 1928, Lenora Leahy conveyed the property to Catherine Moore, now Catherine Boggs, the deed containing no trust provisions; that plaintiff acquired actual knowledge of the conveyance from her mother to Catherine in November 1931; that Catherine paid all the taxes from November 1925 to the time of her marriage in July 1937, and that defendant William Boggs has paid them since that time, including special improvement taxes; that defendants made improvements and repairs on the property without any protest by plaintiff; that on August 21, 1942, Catherine conveyed the property to William H. Boggs, her husband; that plaintiff made no demand for delivery of the property nor claim to the property until August 21, 1942; that plaintiff had actual knowledge of the conveyance from Catherine to husband on December 5, 1942; that after he acquired the deed, William H. Boggs expended money for repairs and performed labor in improving the property; that plaintiff has at no time been in the possession of the property nor exercised any dominion or control over it and has paid no taxes thereon, nor collected any rent from the occupants; that she, herself, paid rental for the use of a garage thereon, of $3 per month for one year in 1936 or 1937; that the property has been insured since 1928 in the name of and for the benefit of

Catherine and Catherine has paid the insurance premiums; that plaintiff has failed to prove the existence of any trust for her benefit in or to the property and has failed to prove the material allegations of her complaint.

As conclusions of law the court found that defendant William Boggs is the legal owner of the property; that plaintiff's cause of action is barred by subdivision 4 of section 9033, Revised Codes of Montana 1935, and by sections 9015, 9016 and 9024, Revised Codes, and barred by laches. Judgment was entered accordingly, from which plaintiff appeals after her motion for new trial was denied.

Plaintiff has made numerous assignments of error but has seen fit to discuss them collectively. The first assignment of error questions the propriety of the court's finding that the deed from plaintiff to her mother made on November 18, 1924, was a gift "and contained no provisions nor covenants concerning nor creating a trust or condition of any kind or character." Both plaintiff and her mother testified that the deed from plaintiff to her mother was not intended as a gift. They both testified that the reason for making the deed was that Mr. Miller, who paid the purchase price to Dalberg, might have relatives who might claim the property upon his death. It was understood between plaintiff and her mother that the property was being held as a home for plaintiff. Plaintiff's mother on that point testified as follows:

"Q. 'What was the talk between you when Agnes made the deed to you?' A. We thought, if Mr. Miller had relatives, they would come in and take everything from her; that was it.

"Q. Yes. What did you decide about that? A. Well, I thought when she made it over to me I would keep it until she got it back.

"Q. Did you say anything along that line to Agnes? A. Well, no, but I knew it was right, that it was hers; I knew it wasn't mine.

"Q. Do you remember whether you and Agnes talked about

the possibility that Mr. Miller might have relatives? A. Yes, we did."

There was no evidence refuting the testimony of plaintiff ▆ and her mother on this point. The effect of defendants' evidence was that Agnes deeded the property to her mother upon the request and at the direction of Mr. Miller. But the court impliedly found against defendant on that issue and impliedly found that Miller had given the property to plaintiff because if plaintiff did not own the property she could not make a gift of it to her mother. The court evidently took the view that an absolute deed without consideration and with no covenants creating a trust must, as a matter of law, be considered a gift. This result would perhaps follow if all trusts in relation to real property must be in writing. But it is not necessary that all trusts in relation to real property be in writing. Section 6784, Revised Codes 1935, which is the same as section 852 of the California Civil Code, reads: "No trust in relation to real property is valid unless created or declared: 1. By a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate affected; or, 3. By operation of law."

Section 7887, Revised Codes 1935, corresponding to section 2224 of the California Code, reads: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other or better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

The California courts have repeatedly upheld trusts concerning real property resting in parol under facts very similar to those here involved so far as the transaction between plaintiff and her mother is concerned and particularly where, as here, a relationship of trust and confidence existed between the parties. (Bradley Co. v. Bradley, 37 Cal. App. 263, 173 Pac. 1011; Lauricella v. Lauricella, 161 Cal. 61, 118 Pac. 430, and cases therein cited; Robertson v. Summeril, 39 Cal. App. (2d) 62, 102 Pac. (2d) 347; Huber v. Huber, 27 Cal. (2d) 784, 167 Pac.

(2d) 708, 712. In the latter case it is said: "In this state it is settled that because of the confidential relationship between husband and wife, an oral agreement between the spouses in connection with a conveyance of real property between them or by a third person to one of them can be enforced by making the grantee a constructive trustee for the other spouse if the grantee violates such an oral agreement." (Citing numerous authorities.)

In Scott on Trusts, Vol. I, section 44.2, the rule is stated as follows: "There are numerous cases to the effect that where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise." The court erred in holding that the deed from plaintiff to her mother was a gift.

Under all the evidence a constructive trust resulted when the deed passed from plaintiff to her mother. For the same reason the court erred also in making that part of finding No. XI reading: "That the plaintiff has failed to establish or prove the existence of any trust for her benefit in or to said property and that no trust exists in her favor therein." Plaintiff proved a constructive trust between herself and her mother and she has the right to enforce that trust unless prevented from so doing by subsequent events.

Plaintiff and her mother testified in substance that when plaintiff's mother Lenora Leahy deeded the property to Catherine Moore (now Catherine Boggs) it was understood that the

property would remain that of plaintiff and that Catherine promised to reconvey the property to plaintiff whenever requested to do so. This was flatly denied by defendant, but the court never reached the point where it found it necessary to resolve that conflict. The court simply found that such deed contained no covenant or provision creating a trust. For the reasons above given if plaintiff's version of the facts were correct, absence of a writing would not defeat the trust. Likewise plaintiff testified that when she learned that Catherine had conveyed the property to her husband, the defendant William Boggs, she demanded that the property be reconveyed to her but after some discussion defendant Catherine asked plaintiff to sign a paper transferring the property in question to her if she and her husband would fix up the house in which plaintiff was living. According to plaintiff's evidence this proposal was made by Catherine after she had talked with her husband who was upstairs, she stating to plaintiff that her husband had agreed to do so. This constitutes some evidence that both defendants considered plaintiff the owner of the property after it was deeded to defendant William Boggs by his wife. Defendants denied this evidence by plaintiff but the court did not see fit to resolve that conflict because of the finding that the deed from plaintiff to her mother was a gift and because that deed and the subsequent ones contained no provisions creating a trust.

Having found that plaintiff made a gift of the property to Lenora Leahy in November, 1924, it was unnecessary for the court to go further. If that finding were sustained by the evidence then plaintiff had no further standing in court. She had no cause of action left against which the statute of limitations or any other defense had to be asserted. But the court went further and found that the action was barred by subdivision 4 of section 9033, sections 9015, 9016 and 9024, Revised Codes 1935, and by laches.

In treating of this subject in the briefs, the parties have assumed the existence of a trust and we shall do likewise. As above indicated, if there be a trust it is a constructive trust

and not an express one. An express trust conveying real estate must be in writing. Since this one, if there be a trust, is a constructive trust we are urged to apply the statute of limitations as commencing to run as of the date when Mrs. Leahy conveyed the property to defendant Catherine, if not from the date when plaintiff conveyed to her mother. Defendants rely upon the general rule enunciated in Stianson v. Stianson, 40 S. D. 322, 167 N. W. 237, 6 A. L. R. 280, and the cases therein cited, to the effect that the statute of limitations starts to run on an express trust only from the time it is repudiated to the knowledge of the beneficiary, but that as to a constructive trust the statute of limitations begins to run at the moment the law creates the trust. This is the general rule but it is based upon the supposition that the constructive trustee is holding the property adversely to the beneficiary. Where as in this case there is a relationship of trust and confidence and there is no holding by the trustee adversely, the statute is not running against the beneficiary until refusal to carry out the trust by reconveyance.

The rule applicable here is stated in Scott on Trusts, Vol. III, section 481.1, page 2356, as follows: "Where, however, the beneficiary of a constructive trust has no reason to believe that the constructive trustee is holding the property adversely, the beneficiary will not be barred by laches even though he knows of the circumstances giving rise to the constructive trust. Thus where A conveys land to B who orally agrees to reconvey it to A, and B is in a confidential relation to A, B holds the property upon a constructive trust for A. In such a case A is not guilty of laches in failing to sue as long as B has not repudiated his promise." When the circumstances show an apparent recognition of the trust the statute does not begin to run until the beneficiary has received notice of the assertion of an adverse interest. "Thus where a mother conveyed real estate to her father upon his oral agreement to hold it in trust for her children and he subsequently refused to be bound by his oral agreement, it was held that the statute of limitations did not begin to run in his favor until the time of

140

his open repudiation of the parol trust.'' (Perry on Trusts and Trustees, 7th Ed., Vol. II, sec. 865 (a), p. 1479.)

Sections 9015, 9016, Revised Codes, in substance prevent the recovery of real property unless the person seeking recovery or his predecessor in interest was seized or possessed of the land within ten years before the commencement of the action. If the property was held first by Mrs. Leahy and then by defendant Catherine Moore in trust for plaintiff, then their possession was possession of, by and for plaintiff and the action would not be barred because of these sections.

Section 9024 provides: ''In no case shall adverse possession be considered established under the provision of any section or sections of this code unless it shall be shown that the land has been occupied and claimed for a period of ten years continuously, and the party or persons, their predecessors and grantors, have, during such period, paid all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land.'' Plaintiff here is not seeking to establish title by adverse possession and in consequence that section does not apply.

Subsection 4 of section 9033, Revised Codes 1935, provides a two year limitation for ''an action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.''

This section of our statute ''applies only to actions for fraud or mistake within the common acceptance of the term.'' (Bennett v. Meeker, 61 Mont. 307, 202 Pac. 203, 204, and compare Wagner v. Law, 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 15 L. R. A. 784, 28 Am. St. Rep. 56; Cornell v. Edsen, 78 Wash. 662, 139 Pac. 602, 51 L. R. A., N. S., 279; Hutchinson Realty Co. v. Hutchinson, 136 Wash. 184, 239 Pac. 388; Bradbury v. Nethercutt, 95 Wash. 670, 164 Pac. 194; Noble v. Martin, 191 Wash. 39, 70 Pac. (2d) 1064; Henriod v. Henriod, 198 Wash. 519, 89 Pac. (2d) 222.) This action is not predicated upon fraud in the common acceptation of that term. It is true that fraud is a ground for a constructive trust, sec. 7887, Rev. Codes, and

that violation of trust obligations is a fraud against the beneficiary. Sec. 7894, Rev. Codes. But here fraud is not the basis of the trust claimed but rather failure to comply with the promise to reconvey the property. In consequence if the trust is established, the action is not barred by subdivision 4 of section 9033, Revised Codes 1935.

As above noted, the court did not pass upon conflicting evidence bearing upon the question whether a trust arose, but concluded there was no trust because the several deeds contained no trust provision. It is our conclusion that the cause should be remanded with directions for the court to pass upon the fact situation as to whether a trust arose as contended by plaintiff. If her evidence and that of her mother is believed, then there is sufficient evidence to establish a trust. On the other hand, if defendant Catherine's evidence is believed, then the deed by plaintiff to her mother passed the title because according to her evidence it was given at the direction of Mr. Miller who she claimed was the actual owner.

The deed from Catherine to her husband was made in 1942 and the action was commenced in 1945. The action is governed by the statute relating to the recovery of real estate which in this state is ten years. (Cohn v. Goodday, 191 Cal. 615, 217 Pac. 756; Bradley Bros. v. Bradley, 20 Cal. App. 1, 127 Pac. 1044.) In Earl v. Lofquist, 135 Cal. App. 373, 27 Pac. (2d) 416, 419, it was said: ''The first and second so-called causes of action are, however, for the recovery of real property, and subdivision 4 of section 338 of the Code of Civil Procedure does not apply. The rule stated in Murphy v. Crowley, 140 Cal. 141, 73 Pac. 820, 821, that 'although the main ground of the action is fraud or mistake, whereby the defendant has obtained the legal title to the land in controversy, and the chief contention between the parties is with respect to the fraud or mistake alleged, yet, if the plaintiff alleges facts which show, as matter of law, that he is entitled to possession of the property, and a part of the relief asked is that he be let into possession, or that his title to the land be quieted, the action is in reality for the

recovery of real property, and is not barred except by the five-years limitation contained in section 318 [Code of Civil Procedure]' has been repeatedly approved and followed in a long line of authorities, an enumeration of which may be found in 16 Cal. Jur. 438, n. 12.''

We deem it unnecessary at this time to discuss the legal effect of defendants' evidence tending to show that Catherine Moore bought the property from Mrs. Leahy or the legal effect of the evidence showing improvements made by defendants on the property, nor the effect of defendants paying the taxes and insuring the property throughout the years.

Defendants made several cross-assignments of error but we think only one of them requires consideration. Defendants assign error on the part of the court in denying their motion to require plaintiff to elect as to the kind of trust she is relying upon. It is our view that the court did not err in overruling the motion. Plaintiff need not do more than plead the facts relied upon and then it is incumbent upon the court to apply the law to those facts. Plaintiff is entitled to rely upon whatever trust, if any, the facts will justify.

It is our view that the cause should be remanded with directions to find on the fact issues as presented by the evidence in accordance with the views herein stated and to otherwise proceed as to the court may seem proper.

It is so ordered.

Associate Justices Choate, Gibson, and Metcalf, concur.

Mr. Chief Justice Adair:

I dissent.

Twice widowed Mrs. Lenora Moore Leahy and her two daughters, Agnes Moore and Catherine Moore, resided in Anaconda, Montana.

Eugene Miller, a bachelor of Dillon, Montana, thought kindly of the widow and her daughters.

In 1913 Agnes, the younger daughter, then aged eight and one-half years, went to Dillon to live in Miller's home. She con-

tinued to reside therein until 1925 when Miller died at the ripe old age of 85 years.

On July 19, 1921, Miller purchased for $4,500 a six-room residence and lot known as No. 701 Cherry street in Anaconda from Charles Dalberg and Selma Dalberg, his wife, causing the deed of conveyance from the Dalbergs, as grantors, to run direct to Agnes Moore, as grantee.

On November 18, 1924, Agnes Moore, as grantor, made, executed and delivered a deed conveying the property to her mother, Mrs. Lenora Leahy, as grantee.

On February 23, 1928, Mrs. Lenora Leahy, as grantor, made, executed and delivered a deed conveying the property to her daughter Catherine Moore as grantee. The deed was filed for record the following day, February 24, 1928.

By deed dated and acknowledged August 21, 1941, and filed for record November 30, 1942, Catherine Moore, as grantor conveyed the property to her husband Wiliam H. Boggs, as grantee.

On July 16, 1945, Agnes Opp, formerly Agnes Moore, plaintiff, commenced this action against her sister Catherine Boggs and the latter's husband, William H. Boggs, defendants, seeking decree: (a) That she be adjudged to be the owner of the described property; (b) that the deed of February 23, 1928, to Catherine and the deed of August 21, 1941, to William H. Boggs created a trusteeship in plaintiff's favor; (c) that each alleged trusteeship be terminated and that defendants be required to quitclaim title to the property to plaintiff; (d) that the deeds and record thereof to Catherine and to her husband be annulled as void and (e) that plaintiff's alleged title to the property be quieted.

In the fifth and sixth paragraphs of her complaint plaintiff, as to the deed from Catherine to her husband, William H. Boggs, recorded November 30, 1942, charges: "From the time of the recording of the last named deed the defendant wrongfully and unlawfully repudiated and denied plaintiff's ownership or interest in the property described in this complaint and since the recording * * * defendant wrongfully and unlawfully have as-

serted that the full ownership of the property * * * was conveyed * * * to William H. Boggs * * * but *said last mentioned deed was made and intended to defraud plaintiff* out of her ownership in the property and * * * to prevent plaintiff from establishing that Catherine Boggs held legal title as a trustee for the plaintiff.''

Thus does plaintiff, in this action, seek relief on the ground of *fraud.* ''A party is bound by his pleading. He may not plead one thing and contend to the contrary.'' (Gilna v. Barker, 78 Mont. 357, 254 Pac. 174, at page 178; Anderson v. Mace, 99 Mont. 421, 45 Pac. (2d) 771; Worden v. Alexander, 108 Mont. 208, 90 Pac. (2d) 160.) Likewise on appeal this court is bound by the pleadings and the theory on which the case was tried in the trial court and may not decide the appeal on another and different theory.

This being an action for relief on the ground of fraud, the action must be commenced *within two years* after the discovery by the aggrieved party of the facts constituting the fraud as provided in subdivision 4 of section 9033, Revised Codes of Montana 1935.

In her testimony at the trial plaintiff admitted that on December 5, 1942 (being more than two and one-half years before the commencement of this action), she discovered and learned that her sister Catherine had given a deed to the property to William H. Boggs.

Plaintiff Agnes also testified that in 1931 (being fourteen years before this suit was commenced) she discovered and learned that her mother had conveyed the property to Catherine by a deed that neither contained nor described any provision for a trust of any sort.

For their first defense defendants pleaded that this action ''is barred by the provision of subdivision 4 of section 9033, R. C. M. 1935.'' Plaintiff's own testimony establishes the defense so pleaded.

There is nothing on the face of the deed of February 23, 1928, from Mrs. Lenora Leahy, grantor, to Catherine Moore, grantee,

that in any manner indicates that the property therein described was being conveyed to Catherine as trustee. If Catherine gave her mother a valuable consideration for the transfer and if she had no knowledge the property was conveyed to her as trustee then she acquired good title to the property under section 6795, Revised Codes 1935, which provides: "Where an express trust is created in relation to real property, but is not contained or declared in the grant to the trustee, or in an instrument signed by him, and recorded in the office with the grant to the trustee, such grant must be deemed absolute in favor of purchasers from such trustee without notice, and for a valuable consideration." See 26 R. C. L., "Trusts," page 1296, section 148; Hillwig v. Boyer, 89 Cal. App. 314, 264 Pac. 556 (construing a statute the same as section 6795, supra); Patterson v. McKeehen, 168 Okl. 252, 32 Pac. (2d) 875; Payne v. Allen, 178 Okl. 328, 62 Pac. (2d) 1227; 2 Perry on Trusts, page 1387, section 815c, notes 1 and 2.

The testimony of both Catherine and her mother is to the effect that Catherine had no notice of any alleged trust agreement between the mother and Agnes concerning the property.

The majority opinion holds: "The court erred in holding that the deed from plaintiff to her mother was a gift." No authorities are cited in support of the holding and same appears contrary to the rule obtaining in this jurisdiction where it is presumed that the conveyance was made as a gift from the daughter to her mother. See McQuay v. McQuay, 81 Mont. 311, 263 Pac. 683; Roman v. Albert, 81 Mont. 393, 264 Pac. 115; Clary v. Fleming, 60 Mont. 246, 198 Pac. 546; Humbird v. Arnet, 99 Mont. 499, 44 Pac. (2d) 756. See also section 6795, Revised Codes of Montana and 3 Scott on Trusts, sections 474-476.

If as she contends the plaintiff Agnes had a trust agreement with her mother, then clearly the deed of February 23, 1928, from the mother to Catherine and the deed of August 21, 1941, from Catherine to William H. Boggs violated such trust agreement and would constitute a fraud against the beneficiary

Agnes. Section 7894, Revised Codes, provides: "Every violation of the provisions of the preceding sections [7888 to 7893] of this chapter *is a fraud* against the beneficiary." (Emphasis supplied.)

Under such circumstances plaintiff was required to commence her action for relief within two years after her discovery of the alleged fraud wrought by the breach of the alleged trust agreement by the making of the deeds conveying the property first to Catherine and thence to the latter's husband William H. Boggs. Subdiv. 4, sec. 9033, Rev. Codes 1935.

The evidence shows that the plaintiff Agnes has not been in possession of the house in question within ten years before the commencement of her action and that she has paid no taxes thereon during such time so that the trial court was further warranted in finding her action barred. See Anderson v. Mace, 99 Mont. 421, 45 Pac. (2d) 771; Laas v. All Persons, 121 Mont. 43, 189 Pac. (2d) 670.

Section 9015, Revised Codes, in part, provides: "No action for the recovery of real property, or for the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question within ten years before the commencement of the action."

Section 9016, Revised Codes, in part, provides: "No cause of action * * * arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action * * * or under whose title the action is prosecuted * * * or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within ten years before the commencement of the act in respect to which such action is prosecuted * * *."

Section 9024, Revised Codes, provides: "In no case shall adverse possession be considered established under the provision of any section or sections of this code unless it shall be shown that the land has been occupied and claimed for a period of ten years continuously, and the party or persons, their predecessors

and grantors, have, during such period, paid all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land.''

The trial court found that plaintiff's action was barred by sections 9015, 9016 and 9024, Revised Codes, supra, as pleaded by the defendants.

The evidence in this case is conflicting but the resolution of such conflicts was for the trial court.

The plaintiff Agnes testified: That her mother advised her that in the event of the death of Eugene Miller his heirs might claim the property which had been purchased by Miller but conveyed direct to her; that plaintiff then conveyed the property to her mother, at which time both the mother and Catherine were living in the house conveyed; that thereafter the taxes were always paid by her mother and Catherine; that in 1925 she married at Dillon and continued to reside there until 1929; that she received no money from her mother for the deed conveying the house to the mother; that in 1931 she learned her mother had conveyed the property to Catherine; that her mother and Catherine took a trip east and upon their return plaintiff discussed with Catherine the conveyance from the mother to Catherine and that Catherine then said ''You know, Agnes, that is your house and any time you want it you can have it'' and that she *thinks* her mother heard such conversation. The mother denied being present at any such alleged conversation. Catherine also denied any such conversation with Agnes.

Plaintiff Agnes further testified: That upon her return to Anaconda in 1929 she took up her residence on East Fourth Street in a house in which she had an interest and that she continued to reside there to the time of the trial herein and that on December 5, 1942, she received information through the mail informing her that Catherine had deeded the house at 701 Cherry street to her husband, William H. Boggs. Agnes also described an alleged interview which she says she then had with Catherine concerning the last mentioned deed. Catherine

denies such alleged interview and denies making the alleged statements which Agnes says she then made.

Agnes admitted that she never received any rent for the house at 701 Cherry street. She detailed an interview with Catherine in May 1945 regarding the use of the garage. Catherine admitted this interview but she did not admit all the statements which Agnes says she then made.

On cross-examination Agnes testified: That the defendants, William H. Boggs and Catherine, his wife, moved into the house in question in September 1937; that in 1939 defendants commenced repairing and improving the house and continued making extensive repairs and improvements thereon for several years; that she made no protests and that she paid no part of the cost of such repairs and improvements and that in a conversation she had with Boggs in 1942 he told her that Catherine claimed she owned the house. Agnes also admitted that in 1929 a new roof was put on the house; that electric wiring was installed and other improvements made and that the cost thereof was all paid by Catherine or her husband.

On redirect examination Agnes testified that from March 1937 to May 1945 she used the garage at 701 Cherry street and that she paid $3 per month rent therefor for about a year.

Agnes also testified that Eugene Miller owned an undivided one-half interest in four houses and that he also owned six other houses all situated in Anaconda and that before they moved into the house at 701 Cherry street her mother, Lenora Leahy, and her sister Catherine lived in one of Miller's houses.

The mother, Lenora Leahy, testified: That Agnes conveyed the Cherry street property to her to avoid the possibility of claims by Miller's heirs; that she (Mrs. Leahy) never talked with Catherine about the deed from Agnes to her and that Miller, as a gift, conveyed to her and to Catherine each a one-half interest in two houses situated on Fourth street in Anaconda and that the other one-half interest therein was owned by an Alec McCabe.

The deed to the Cherry street property from Agnes to her

mother was drafted by and acknowledged before the late Senator T. P. Stewart, a long time and able member of the bar of this court. Concerning such deed Lenora Leahy testified:

"Q. Did you tell Mr. Stewart you wanted to take that as trustee for Agnes? A. *No, there wasn't supposed to be a trustee.* * * *

"Q. Did she tell Mr. Stewart anything? A. No.

"Q. Did Mr. Stewart do what Agnes told him to do? A. I suppose he did."

The deed to the Cherry street property from Mrs. Leahy to her daughter Catherine was drafted by and acknowledged before J. C. B. Knight, Esq., also an able, careful and long time member of the bar of this court. Regarding such deed Mrs. Leahy testified:

"Q. Did Mr. Knight do just what you told him at that time? A. Yes.

"Q. Does this deed, which is here in evidence as plaintiff's exhibit 4, express everything you told Mr. Knight? A. I guess so."

Attorney J. C. B. Knight testified: "Mrs. Leahy came to me for the purpose of having this deed drawn and acknowledged, and I placed a consideration of one dollar on there according to their instructions.

"Q. Did Mrs. Leahy, at the time and place that the deed, plaintiff's exhibit 4, was drawn by you, tell you that she held the property as trustee for Agnes Opp? A. No she didn't.

"Q. Did she say to you that she wanted to transfer her trust in that property to Catherine Moore? A. No, she didn't * * *

"Q. Did either Mrs. Leahy or Miss Moore ask you to draw a deed of trusts? A. No, sir.

"Q. Did either of them ask you to draw a deed, transferring an interest of a trustee from one trustee to another? A. No, they didn't.

"Q. Did either Mrs. Leahy or Miss Moore, at the time of

that deed, mention any interest of Agnes Opp in or to the property described in that deed? A. No, they didn't.''

*Consideration for Deed.* Mrs. Leahy admitted that subsequent to her conveyance to Catherine of the property at 701 Cherry street, Catherine gave her a deed for Catherine's one-half interest in the Fourth street property which Mrs. Leahy later sold to one Eck for $1,200 and kept and used the money.

Catherine testified that with her own money she bought and paid for 20 shares of Anaconda stock (now worth about $2,000) which she delivered to her mother which the mother now has and on which she collects all the dividends. Mrs. Leahy admits she has a certificate for 20 shares of Anaconda stock but denied that Catherine bought the stock, testifying she had acquired same from the estate of her deceased husband, Mr. Leahy. The inventory and the decree of distribution in Mr. Leahy's estate were introduced in evidence and neither list nor show that Mr. Leahy owned any Anaconda stock at the time of his death.

Catherine also testified that she gave her mother certain certificates of stock in Western Building and Loan Company and that she gave her a check for $1,700 as her mother was leaving for Sioux City, Iowa, which check the mother cashed. Mrs. Leahy denied that Catherine gave her the check for $1,700 or that she had given her any other check and testified that she did not know that Catherine ever had any money in the bank. On her cross-examination however, Mrs. Leahy was shown six bank checks all payable to her order and drawn by Catherine, all of which had been paid by the bank. Thereupon she admitted her signature endorsing one of the checks, Exhibit h-4, but denied having endorsed the remainder. Later she changed her testimony, denying her signature on the check, Exhibit h-4, dated October 12, 1926 and admitting that she signed her name endorsing Exhibit h-6, being a check drawn by Catherine bearing date of April 11, 1927.

The defendant William H. Boggs testified: That he made repairs and improvements on the house amounting to a total of $3,526.84; that Agnes paid no part of the cost of such repairs

and improvements; that he paid the taxes on the property from 1937 to 1945 as is shown by the tax receipts which he introduced in evidence; that Agnes never objected to his doing of any of the repairs or improvements and that at no time prior to the commencement of this action did she claim to be the owner of the property; that he had no discussion with Agnes about the house and that the deed given him by Catherine was to avoid a possible dispute with the labor union as he was doing the repair work himself on the house and also to get away from probate.

Catherine identified seven checks payable to the order of her mother and introduced in evidence as original exhibits and testified that six of them were endorsed by her mother and that the seventh check, Exhibit h-2, was endorsed by Catherine and deposited for her mother.

The trial court had the advantage of seeing the witnesses upon the stand and hearing them testify and as stated in Payne v. Allen, supra, under most similar facts: ''The trial court heard the testimony of all of the parties and found the issue in favor of the defendant, Allen, and where a man contends that he is a bona fide purchaser of land without notice of the claims of third persons and the trial court makes a general finding in his favor, such finding will not be disturbed by the appellate court where there is reasonable testimony to support the findings of the court.'' See also Watkins v. Watkins, 39 Mont. 367, 102 Pac. 860.

I find no prejudicial error in the record before the court on this appeal. I therefore see no justification for remanding the cause for further proceeding or a new trial of issues already once thoroughly threshed out in the trial court. On these issues there was and will continue to be real and irreconcilable conflicts. Wherein lies the truth the district judge and not this court must say. The judgment of the trial court should be affirmed.

Rehearing denied May 27, 1948.