PRICE, RESPONDENT, *v.* WESTERN LIFE INSURANCE CO., APPELLANT.

(No. 8425.)

(Submitted January 12, 1944. Decided February 24, 1944.)

[146 Pac. (2d) 165.]

510

*Mr. M. L. Parcells,* for Appellant, 

*Mr. T. B. Weir,* and *Messrs. Weir, Clift & Bennett,* for Respondent, *Mr. Weir* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to quiet title to land under claim of title by adverse possession.

In 1903 the United States issued to the plaintiff Price a patent to a fractional quarter section of land in Township 3 South, Range 18 East, M. M. The Stillwater River flowing in an easterly direction cuts into the two forty-acre tracts lying on the north of the quarter section. In 1906 Soren P. Larsen received a patent for a fractional quarter section adjoining the Price land on the north and west. The meandering course of the Stillwater River on which both tracts border leaves a small fraction of the Price land across the river on the north side adjoining the Larsen land, and two fractions of the Larsen land on the south side of the river adjoining the Price land. Larsen lost his land in 1925 by foreclosure of a mortgage held by the defendant, and has been dead for several years. Price, testifying in the instant action, states that he and Larsen mutually agreed in 1901 that they would exchange the fractional parts of their lands lying on the opposite side of the river from their principal holdings when patents were obtained. The agreement was verbal. They made one or two abortive efforts to have deeds made and executed, but the irregularity of the boundary lines of the tracts of lands involved were such as made it necessary to have the tracts surveyed, and on account of the fact that a surveyor would have to come a distance of eighty miles by slow conveyance they estimated the cost for a survey would exceed the value of the lands, and in lieu of deeds they agreed that so long as they lived each should have the use of the land the other owned' on the opposite side of the river.

Both parties mortgaged their respective lands from time to time, and each included in his mortgage the part of his land he

had agreed the other should have. In 1919 Larsen mortgaged his land to the Columbus State Bank of Columbus, Montana. Shortly thereafter that bank assigned the mortgage to the defendant. February 23, 1924, the defendant foreclosed the mortgage and obtained a sheriff's certificate of sale; March 11, 1925, a sheriff's deed was issued to the defendant and the defendant has been in possession of the land at all times since. From 1924 down to the commencement of this action the land was in the physical possession of some tenant of the defendant or one who had entered into a contract with the defendant to purchase the same. It does not appear that the defendant had any knowledge of plaintiff's claim to any part of the Larsen land until in 1938, some thirteen years after it obtained title to the land by sheriff's deed. July 16th of that year F. A. Howard, "Vice President in charge of mortgage loans and real estate" for the defendant, having been advised that the plaintiff desired to see him, called on the plaintiff at Absarokee. At that time Howard was advised by Price that "several years ago" a trade had been made between him and Larsen covering the land here involved. The record does not show any further contacts between the parties prior to the commencement of this action, except some correspondence between the defendant and counsel for the plaintiff.

The trade of lands between Price and Larsen is emphasized in the testimony, and it is quite clear that Price was in possession of and used that part of the Larsen land lying on the south side of the river up to and until 1925, and possibly to some extent thereafter. It does not appear whether Larsen used the Price land that lay on the north side of the river or not, but the use of either tract is not material in our view of the case. The trade alleged was in the nature of an exchange of real property as defined by section 7632, Revised Codes, et seq. (See, also *Apple* v. *Henry*, 66 Mont. 244, 213 Pac. 444, and 33 C. J. S., Exchange of Property, p. 3 et seq.) The exchange of lands is not effective under our statutes unless deeds of conveyance pass between the parties. (Sec. 6859, Rev. Codes.) Reference to the trade is made here only because of its bearing on plaintiff's claim

of title by adverse possession, which is the sole question to be determined. Judgment was for the plaintiff and defendant appealed.

When the matter came on for hearing the parties agreed by stipulation that Price paid no taxes on the land title to which he seeks to have quieted in him. Other stipulations agreed to we deem unimportant to the solution of any question in issue and will not be noticed here.

The rule governing establishment of title to land by adverse possession is clearly established in this jurisdiction. Among the facts that one must establish in seeking to oust the title of another and establish his own, is hostile possession for the statutory period. The possession of the plaintiff is shown by the record to have been permissive, not hostile. We said in a recent case: "While a permissive possession may subsequently become hostile (2 C. J. S. 639, Adverse Possession, sec. 87), to make it so there must be a repudiation of the permissive possession * * *, and the repudiation must be brought home to the owner by actual notice, * * *." (*Kelly* v. *Grainey*, 113 Mont. 520, 529, 129 Pac. (2d) 619, 624, and cases cited; see, also, *Ferguson* v. *Standley*, 89 Mont. 439, 499, 300 Pac. 245, and cases there cited.) Price's testimony relative to the trade arranged between him and Larsen does not indicate any hostility of any nature but, on the contrary, shows cordial, neighborly relations between them over a long period of years. So long as Larsen occupied his land there is nothing in the record to show that Price intended to invade Larsen's title, or to hold the land in hostility to Larsen, and the defendant was not advised of Price's claim for a long period of time after the sheriff's deed was issued to the defendant. "No matter in what jurisdiction the determination of what constitutes adverse possession may arise, the decisions and textbooks are unanimous in declaring that such possession, among other things, must be hostile." (*Houston Oil Co. of Texas* v. *Stepney*, Tex. Civ. App., 187 S. W. 1078, 1084.) Such is the general rule.

"Hostile" as used in the books in relation to the adverse possession of land does not mean, to use the language of dis-

tinguished counsel, that one "must run off the legal owner from the land with a pitchfork," but we think it necessarily must mean an invasion of the owner's possession by the claimant without the owner's permission and in violation of the owner's right of property. "Adverse" means "having opposing interests, having interests for the preservation, of which opposition is essential." (Webster's New International Dictionary.) When possession has been adverse for the statutory period, the law raises the presumption of a grant, but this presumption arises only when the occupation would otherwise have been unlawful. (*Tinkham* v. *Arnold,* 3 Greenl., Me., 120; *Jackson ex dem. Ten Eyck* v. *Richards,* 6 Cow., N. Y., 617; *Hall* v. *Powel,* 4 Serg. & R., Pa., 456, 8 Am. Dec. 722.)

During all the years Price and Larsen were neighbors, whatever the nature of the possession Price exercised over the Larsen land is shown by the record to have been a possession exercised in clear recognition of Larsen's title, and that such possession was permissive and not hostile. "The possession * * * having begun as permissive holding, could never ripen into title by adverse possession until sufficient time had elapsed after actual [notice of] ouster * * *, and there was no proof of ouster." (*McCutchen* v. *McCutchen,* 77 S. C. 129, 57 S. E. 678, 679, 12 L. R. A., (n. s.), 1140.)

In the case of *Lindokken* v. *Paulson,* 224 Wis. 470, 272 N. W. 453, 455, 110 A. L. R. 910, it was said as to one in possession of land by the permission of the owner: "The law is very rigid [5, 6] with respect to the fact that a use permissive in the beginning can be changed into one which is hostile and adverse only by the most unequivocal conduct on the part of the user. The rule is that the evidence of adverse possession must be positive, must be strictly construed against the person claiming a prescriptive right, and that every reasonable intendment should be made in favor of the true owner." (Citing cases.) Following this citation from that case, the writer of that opinion used language that may very appropriately be used to present the correct situation in the case at bar. The court said: "The difficulty with

plaintiff's case here is that there is no act from which hostility to the interests or rights of the defendant as the owner of the servient estate, can be inferred.''

It was said in the case of *Content* v. *Dalton*, 122 N. J. Eq. 425, 194 Atl. 286, 289, 112 A. L. R. 1031: ''It would shock that sense of right which must be felt equally by legislators and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title.'' The books are replete with cases of like tenor and effect.

We think that if Price and Larsen had, after patent, and when both tracts of land were free from incumbrances, entered into a formal agreement, such as is mentioned in the case of *Wilson* v. *Mundy,* 238 Ill. App. 575, 585, equity might decree proper conveyances to carry out such agreement. It was said in that case: ''Plaintiff * * * agreed to exchange lands under the contract of December 30, 1919. That was a completed contract, in writing, and contains all the covenants and agreements between the parties, and recites and covers all matters of consideration between them. Under this contract, the equitable title to the properties was transferred to the respective purchasers, just as effectively as though the deeds and conveyances had been delivered.'' We have no such case here; no contract that meets the requirements of the statutes herein recited, and no facts in the record to sustain any claim of title by adverse possession.

The judgment is reversed and the cause remanded with instruction to dismiss the action with costs to the defendant.

Mr. Chief Justice Johnson and Associate Justices Anderson, Erickson and Adair concur.