LAAS, RESPONDENT, v. ALL PERSONS CLAIMING ANY INTEREST IN OR LIEN UPON REAL PROPERTY HEREIN DESCRIBED, ET AL., APPELLANTS.

No. 8736.

Submitted December 16, 1947. Decided February 17, 1948.

189 Pac. (2d) 670.

44

Mr. D. W. Doyle, of Conrad, for appellants. Mr. Doyle argued the cause orally.

Mr. E. J. McCabe, of Great Falls, and Mr. Cedor B. Aronow, of Shelby, for respondent. Mr. Aronow argued the cause orally.

MR. JUSTICE CHOATE delivered the opinion of the court.

This is an action to determine heirship and to establish title to the land patented to the heirs of a deceased entryman, under section 9501 et seq., Revised Codes of Montana, 1945. From a

judgment for plaintiff, defendants, the heirs of the estate of Katie Robowoitra, appeal.

The lands involved in this action were entered as a homestead by Katie Robowoitra who died intestate before the issuance of patent, leaving as her sole surviving heirs three nephews and nieces, Ferdinand Robowoitra, Gustave Robowoitra and Renette Robowoitra, the defendant herein. Patent to said land was issued by the government of the United States on April 5, 1918, to the heirs of Katie Robowoitra, deceased, and the defendants as such heirs claim title to said property. Plaintiff asserts title to said land under a tax deed issued by the county treasurer of Liberty county, Montana, to Nick Laas, plaintiff's husband, on December 19, 1922, and under subsequent conveyances to her and her predecessors in interest. Plaintiff also claims said land by adverse possession and pleads laches and estoppel on the part of the defendants in asserting their claims to ownership of the property.

The trial court made findings of fact in favor of the plaintiff on all issues and gave judgment accordingly.

1. We will first consider plaintiff's plea of adverse possession. The necessary elements of adverse possession which are applicable to the facts of this case are set out in the following sections of our Code:

"No action for the recovery of real property, or for the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question within ten years before the commencement of the action. * * *" (Sec. 9015, Rev. Codes of Montana 1935.)

"No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted or the defense is made, or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within ten years before the com-

mencement of the act in respect to which such action is prosecuted or defense made.'' (Sec. 9016.)

''When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property, under such claim, for ten years, the property so included is deemed to have been held adversely, except that when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract.'' (Sec. 9019.)

''For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases:

''1.   Where it has been usually cultivated or improved.

''2.   Where it has been protected by a substantial inclosure.

''3.   Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber, either for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant.

''4.   Where a known farm or a single lot has been partly improved, the portion of such farm or lot that has been left not cleared or not inclosed, according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated.'' (Sec. 9020.)

''In no case shall adverse possession be considered established under the provision of any section or sections of this code unless it shall be shown that the land has been occupied and claimed for a period of ten years continuously, and the party or persons, their predecessors and grantors, have, during such period, paid

all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land.'' (Sec. 9024.)

Under the above sections it is incumbent upon the plaintiff to establish the following facts in order to claim adverse possession:

(a)   Seizin or possession of the property within 10 years before the commencement of the action;

(b)   An entry into the possession of the property under claim of title founding such claim upon a recorded instrument as being a conveyance of the property in question and that there has been a continued occupation and possession of the property included in such instrument for 10 years;

(c)   That the land has been usually cultivated or improved or protected by a substantial inclosure or used for the purpose of husbandry or for pasturage or for the ordinary use of the defendant;

(d)   That the land has been occupied and claimed for a period of 10 years continuously and that the claimant, her predecessors and grantors have, ''during said period'' paid all the taxes which have been legally levied and assessed upon said land.

In addition to the above statutory provisions this court has in a number of cases stated the requirements for adverse possession of realty. Ferguson v. Standley, 89 Mont. 489, 300 Pac. 245, 249, states the rule as follows: ''Possession of realty, to be adverse, must be actual, visible, exclusive, hostile, and continuous for the full period. (Collins v. Thode, 54 Mont. 405, 170 Pac. 940; Kenck v. Deegan, 45 Mont. 245, 122 Pac. 746; Smith v. Duff, 39 Mont. 374, 102 Pac. 981, 133 Am. St. Rep. 582); the claim of the possessor must invade the title of the other (Bullerdick v. Hermsmeyer, 32 Mont. 541, 81 Pac. 334), and be so brought home to him that he is in a position to institute action for possession at all times during the running of the statute of limitations. (Newton v. Weiler, 87 Mont. 164, 286 Pac. 133; Morrison v. Linn, 50 Mont. 396, 147 Pac. 166, 168; Blackfoot Land Development Co. v. Burks, 60 Mont. 544,

199 Pac. 685). To these requirements has been added that the possessor must have paid all taxes legally levied and assessed upon such land during the period claimed, sec. 9024, Rev. Codes 1921.''

The following are the facts constituting plaintiff's adverse possession of the property in question: On or about December 19, 1922, Nick Laas, plaintiff's husband and predecessor in title, procured a tax deed to the land involved herein from the treasurer of Liberty county. Upon receiving said tax deed, Nick Laas, claiming in good faith to be sole owner entered into and assumed the open, visible, exclusive and sole possession of said land and fenced and enclosed same by a substantial barb wire fence at a cost of $250, constructed an earth embankment reservoir thereon in the year 1923 at a cost of $125, and impounded water therein and thereafter used it to water stock. In the years 1924 and 1925 he plowed, cultivated and put in crop 65 acres of the said land, and erected a frame building thereon, at a cost of $75 which he used for a lambing shed, and thereafter used the building for lambing purposes. During the years from 1922 to October 10, 1932, he used the land to graze his livestock. Said Nick Laas was in open, visible, and exclusive possession of said land from about December 19, 1922, until he conveyed same to Walter Laas on October 10, 1932. During all of the time Nick Laas was in possession of said land he claimed in good faith to be the sole and exclusive owner of the land, paid taxes assessed and levied against the land and while in possession and claiming ownership of the land, conveyed a 2% oil and gas mineral royalty interest in the land to one J. O. Berglin and in 1929 executed an oil and gas lease to Kenneth B. Frazer embracing said land and other lands, which oil and gas lease has by its express terms expired. The aforesaid conveyance of mineral royalty interest and oil and gas lease were duly filed for record in the office of the county clerk and recorder of Liberty county, Montana. On December 28, 1922, Nick Laas, his wife joining, executed a mortgage embracing said land to secure payment of $1,500 to the First National

Bank of Chester and said mortgage was duly filed for record and recorded in the office of the county clerk of Liberty county, Montana.

While in possession of said lands, to wit, on October 10, 1932, Nick Laas, his wife Lizzie Laas joining with him, granted and conveyed to their son, Walter Laas, by written instrument of conveyance the said land and said instrument of conveyance was filed for record and recorded on October 21, 1932, in the office of the county clerk and recorder of Liberty county, Montana, and said Walter Laas entered into the sole, exclusive, open, visible and notorious possession of said land in good faith, claiming to be the sole owner of said land and used said land to run and graze his livestock thereon, repaired and maintained the fences enclosing same and in good faith claimed at all times from aforesaid conveyance of said land on October 10, 1932, until he conveyed said land on June 12, 1940, to Lizzie Laas, to be the sole and exclusive owner of said land and paid taxes assessed and levied against said land.

While in possession of aforesaid land, to-wit, on June 12, 1940, Walter Laas granted and conveyed said land to plaintiff, Lizzie Laas, his mother, by a written instrument of conveyance and grant, his wife joining in the execution of same and said instrument of conveyance was filed for record and recorded in the office of the county clerk of Liberty county, Montana, on June 12, 1940, and thereupon the plaintiff, Lizzie Laas, entered into the open, exclusive, visible and notorious possession of said land claiming in good faith to be the owner thereof and thereafter continued in said possession, at all times in good faith claiming sole ownership, up to and including the time of the trial of said action. After receiving from Walter Laas delivery of aforesaid instrument of grant and conveyance of said land to her, she grazed her livestock upon said land up to and including the time of sale of her livestock in the spring of 1945. During said time she maintained the fences on the land in a state of repair at her expense at all times until the spring of 1945. In 1941 she constructed a reservoir upon the

land at a cost of $200 and also repaired another reservoir located on said land and paid taxes assessed and levied against said land.

On March 15, 1943, Lizzie Laas, her husband joining with her, executed and delivered a written oil and gas lease embracing aforesaid land and other lands in favor of the Texas Company, whereby Lizzie Laas warranted and agreed to defend the title to said land and whereby there was given to the Texas Company the right to explore, drill, process and develop the land for the purpose of producing oil and gas therefrom and which lease granted unto the Texas Company 87½% of all oil and gas produced and saved from said land. Said lease was filed for record on April 1, 1943, and duly recorded in the office of the county clerk and recorder of Liberty county, Montana. The term of said oil and gas lease was for 10 years and as long thereafter as oil or gas is produced or can be produced from any well located on the land described in the lease. Said lease may subject plaintiff to liability to the Texas Company for damages, since gas has been discovered on lands near those involved in this action.

Prior to the time of the trial of this cause, taxes on said land had been duly assessed and levied for the years 1923 to 1932, both years inclusive, against Nick Laas; taxes on said land had been duly assessed and levied on said land for the years from 1933 to 1940, both years inclusive, against Walter Laas; taxes on said land had been duly assessed and levied for the years from 1941 to 1944, both years inclusive, against Lizzie Laas, and said taxes had been fully paid by aforesaid Nick Laas, Walter Laas and Lizzie Laas, respectively, and defendants at all times had failed to pay and had wholly failed to offer to pay said taxes or any thereof.

In our opinion the facts above recited are sufficient to establish adverse possession by the plaintiff within the limitation of our statutes and the decisions of this court.

Tangible objects such as barbed wire fences and reservoirs speak for themselves and require no statement of intention from

him who builds them on others' land. They are actual, visible, exclusive and hostile. They invade the rights of him on whose land they are erected. The same is true to a lesser degree of such acts as breaking up the land or planting it to crops or pasturing it with cattle, horses' or sheep. In this connection it should be noted that in Sullivan v. Neel, 105 Mont. 253, 73 Pac. (2d) 206, we held that lands may be held adversely by pasturage without inclosures. Such intangibles as a $1,500 mortgage or an oil and gas lease, while not so obvious and easy of ascertainment as tangible objects such as above indicated, were nonetheless a very real assertion of title, the existence of which might readily have been discovered from the county records.

The entire record in this case moreover, is barren of any suggestion that prior to the institution of plaintiff's action, the defendants or any of them ever told plaintiff or her predecessors in interest that they or any of them owned the land or ever asked plaintiff to vacate said property. The only testimony in the record bearing on that subject is the following: Counsel stipulated that none of the defendants ever instituted any proceedings in court to establish their title if any to the land or to assert any hostile title to the land until the filing of their first answer in the present case. Nick Laas also testified that during all the time that he was running livestock on the land he met the defendants every month and that none of them ever came to him and made any claim that they owned the land. He also testified that since Walter Laas deeded the land to him none of said defendants ever told him that they owned the land or ever told him to get off the land. This testimony was not contradicted by defendants Ferdinand or Gustave Robowoitra while on the witness stand nor did either of said defendants give any contrary evidence.

Attention is directed by defendants to the fact that the three Robowoitra heirs were minors, none of them being over 16 years of age in the year 1922 when Nick Laas procured his tax deed. Gustave Robowoitra, who was born April 6, 1910, was then about 12 years old, Renette Robowoitra, who was born

August 3, 1908, was about 14, and Ferdinand Robowoitra, who was born April 17, 1906, was about 16 years of age. Gustave therefore attained his majority in 1931, Ferdinand in 1927, and Renette became 18 years of age in 1926, This action was instituted about December 16, 1943, This was more than 10 years after the youngest of the Robowoitra heirs had attained his majority and no action was brought by any of said heirs within said 10 years to recover the property or to make any defense with respect thereto as required by section 9026, Revised Codes.

2. Taxes. We will now consider the question of the payment of taxes since defendants urge that under section 9024, Revised Codes 1935, the payment of taxes by an adverse claimant must be made concurrently in the year when the taxes become due and that several years' taxes cannot be allowed to become delinquent and then be paid in a lump sum by one who asserts adverse possession. Without itemizing all the years involved, the record discloses that during a period of 21 years all the taxes assessed against the lands involved in this action were paid either by Nick Laas, Lizzie Laas or Walter Laas. Mrs. Laas testified that during the time her husband Nick and her son Walter owned the land she sometimes paid the taxes for their benefit.

At any rate, there can be no doubt but that plaintiff or her predecessors in interest, her husband or her son, paid all the taxes during the above 21 years. With one or two exceptions however, these taxes were not paid when they became due. For example, Lizzie Laas paid the taxes for the years 1926-1929 on November 30, 1929. On June 25, 1943, Lizzie Laas paid the taxes for the years 1933-1934. Also, on June 25, 1943, Walter Laas paid the taxes for 1935-1940, inclusive.

As before indicated, the statute (sec. 9024) requires that the adverse claimant must show that the land has been occupied and claimed for a period of 10 years continuously and that during said period he has paid all the taxes which have been legally levied against the land. Does this mean that the adverse claimant must pay the taxes concurrently each year as they

become due or does it mean that at any time during the 10 year period the claimant may pay up all or any of the taxes theretofore levied?

The question seems to be one of first impression in Montana. Reading and construing the above statute as an ordinary English sentence, its meaning should not be difficult to ascertain. The words "during said period" plainly refer to the "period of ten years continuously" which immediately precede them. The legislature has therefore said no more than this, namely, an adverse claimant must show that he has claimed the land for a period of 10 years continuously and that he has paid all the taxes thereon which were levied during that period. Had the legislature intended the more restricted meaning contended for by appellants, it would have been easy for it to have said that the taxes should be paid "concurrently," or "as they become due" or "before they become delinquent" or any other language from which an intent to prohibit payment or redemption at one time of more than one year's taxes could be inferred.

The courts of other states having statutes similar to ours are not in harmony on this question. In 2 C. J. S., Adverse Possession, sec. 175, the law is stated as follows: "Some courts, even though the statute does not expressly so provide, require claimant to pay the taxes of each year of the period before they become delinquent so that the true owner may have due notice that his land is being claimed adversely. Other courts refuse to apply such a construction to the statute and hold that the payment of the accrued taxes for the consecutive years constituting the statutory period at any time when such taxes are payable during the period is a sufficient compliance with the statute." The same rule is again stated in 2 C. J. S., Adverse Possession, sec. 176.

The California statute, section 325, California Code of Civil Procedure, is similar to ours except that it requires a showing that the land has been occupied and claimed for a period of five years continuously and that the party or persons claiming the land have paid all the taxes which have been levied and

assessed upon such land. Under this statute California has held in Gray v. Walker, 157 Cal. 381, 108 Pac. 278, that where payment of taxes was relied upon to estabish adverse possession, the fact that in one year the land was sold for delinquent taxes and redeemed by the one claiming adversely, did not prevent the acquisition of title.

Similarly in Devlin v. Powell, 67 Cal. App. 165, 227 Pac. 231, a case involving adverse possession, some of the taxes had been allowed to become delinquent but were subsequently paid and redemption of the property had while the plaintiff and the grantors were in undisputed possession. It was held that plaintiff's rights were the same as though the taxes had not been allowed to become delinquent. Citing Owsley v. Matson, 156 Cal. 401, 104 Pac. 983.

The following are illustrative cases from other jurisdictions. Beaver v. Taylor, 1 Wall. 637, 17 L. Ed. 601. In that case the statute involved provided that the claimant must pay all taxes levied on the land for seven successive years. The court held that the taxes for the seven years may be paid in one year for another.

Latta v. Clifford, C. C., 47 F. 614, 615, held that in dealing with a statute which required that the taxes necessary to be paid were those for "five successive years." The court instructed that if the taxes were paid from 1882 to 1889, inclusive, and all the years between them, that would be a sufficient payment of taxes.

In Rachels v. Stecher Cooperage Works, 95 Ark. 6, 128 S. W. 348, the court held that if taxes are paid as prescribed by statute seven years in succession at any time when taxes are payable, the party paying acquires title whether he makes the payments within one year of each other or not.

The South Dakota statute, Laws 1891, C. 24, sec. 1, provides that every person in the actual possession of land who shall have continued for 10 successive years in such possession and shall also "during said time" have paid the taxes on said land, shall be adjudged to be the legal owner thereof. In Murphy v.

Redeker, 16 S. D. 615, 94 N. W. 697, 102 Am. St. Rep. 722, the court held that a failure to pay taxes for any one year within the year for which the tax is levied is not fatal to a claim of title, a payment of all legal taxes during 10 successive years being a substantial compliance, citing Hinchman v Whetstone, 23 Ill. 185.

Upon this phase of the case, therefore, we hold that plaintiff has sufficiently complied with the requirements of the statute relative to the payment of taxes necessary to support adverse possession.

The conclusions reached render it unnecessary to discuss other questions which have been raised by plaintiff, or to pass upon the sufficiency of the tax deed obtained by Nick Laas. The findings of the trial court upon the issue of plaintiff's adverse possession of the land in question are sustained by substantial evidence. Hence, under the holding of this court in Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041, and cases therein cited, they will not be disturbed.

The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Angstman, Gibson and Metcalf, concur.