OLGA TOWNSEND, Plaintiff and Respondent, v. FRANK E. KOUKOL and DOROTHY B. KOUKOL, Defendants and Appellants.

No. 10999.

Submitted April 5, 1966. Decided July 6, 1966.

416 P.2d 532.

H. A. Bolinger, Jr. (argued), Bozeman, for appellants.
Gene I. Brown (argued), Bozeman, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment entered in favor of the plaintiff and respondent in the District Court of the Eighteenth

Judicial District. The judgment enjoined the defendants and appellants from moving a fence from its present location and erecting a new fence on the section line between the legal subdivisions of which the plaintiff and defendants are the record owners.

The action was initiated by the plaintiff Olga Townsend,

and tried upon the theory of adverse possession. The property in dispute is a strip of land located on the common boundary between the plaintiff's and the defendants' land. This strip of land lies within the plaintiff's fence, but also within the defendants' legal description as illustrated on the map on the preceding page.

The plaintiff and her now deceased husband acquired Lot 4 (NW¼NW¼) of Section 4, Township 1 South, Range 4 East, M.P.M. in 1936. Upon her husband's death the plaintiff became the sole owner of this property. The plaintiff's predecessor in interest was one Randall who had acquired the property around 1921.

The defendants, Frank Koukol and Dorothy Koukol, purchased Lot 1 (NE¼NE¼) Section 5, Township 1, South Range 4 East, M.P.M., in 1954. During the year 1961, the defendants Harold Lasater and Florence Lasater purchased from the defendants Frank and Dorothy Koukol an irregular-shaped lot shown in the map above.

The plaintiff's predecessor in interest, Randall, built the fence in question in 1924 or 1925. The fence did not run in a straight line. It had an obvious curve or bow in it which was visible to the naked eye. It was clear that the fence did not follow the section line. It was apparent from the testimony that Randall built the fence for the purpose of separating the farm land on the east side of the fence from the pasture land on the west side of the fence. At that time Randall used the land on both sides of the fence.

According to their legal descriptions the plaintiff owned the land east of the section line and the defendants owned the land west thereof, the section line being a common boundary dividing the property of the plaintiff from that of the defendants. Referring again to the map above it can be seen that the fence built by Randall crossed over to the west side of the section line and enclosed a strip of land legally described to be owned by the defendants.

The plaintiff, since acquiring the property in 1936, has cultivated and grazed the land up to the fence, that is, she occupied the strip of land which is the subject of the dispute. However, the plaintiff did not pay the taxes on this strip of land. They were paid by the defendants. It was stipulated that the respective parties paid the taxes on their properties as the legal description appears, and that the property included in those subdivisions is assessed by the acre.

About two years before the trial of this lawsuit the defendant Frank Koukol had a survey made to establish his east boundary. The section line dividing the lands of the plaintiff from the land of the defendants was surveyed and staked out. The defendants began to construct a fence along the line but were enjoined from so doing. The district court found that the plaintiff owned the land between said survey and the fence constructed by Randall, based upon adverse possession for the statutory period. The district court also found that the fence was acquiesced in by the defendant's predecessors in interest as the "agreed boundary line from the year 1936 and before." The defendants appealed to this court claiming that the fence was not established as an agreed boundary, nor was title to the disputed strip of land established by adverse possession.

The allegation of error we shall consider first concerns the question of whether the fence was ever acquiesced in as an agreed boundary line. The law governing in this area has been set forth in numerous cases. It is necessary that this case law be restated in order to determine the above question. It has been accepted many times that in the absence of an agreement to the effect that a fence between adjoining properties be taken as a true boundary line, mere acquiescence in its existence is not sufficient to establish a claim of title to a disputed strip of land. (Dibirt v. Bopp, 4 Cal.App.2d 541, 41 P.2d 174; Staniford v. Trombly, 181 Cal. 372, 186 P. 599.) It is necessary that the acquiescence consist in recognition of the fence as boundary line, and not mere acquiescence in the existence of a fence as

6

a barrier. (Roberts v. Brae, 5 Cal.2d 356, 54 P.2d 698; Dibirt v. Bopp, supra; Moniz v. Peterman, 220 Cal. 429, 31 P.2d 353.) The California Court in Pederson v. Reynolds, 31 Cal.App.2d 18, 87 P.2d 51 stated:

"It has been definitely held that acquiescence in the maintenance of a fence merely for the purpose of enclosing cattle, or for other convenience of the adjoining land owner, without an agreement that the fence shall become the boundary line between their lands does not constitute an estoppel which will prevent the real owner from subsequently claiming his property."

An examination of the record reveals no evidence of any express agreement between the plaintiff and defendants or between any of their predecessors in interest concerning the construction or location of the fence in question. The evidence is that one Randall constructed the fence in 1924 or 1925, apparently for use as cattle barrier. There is no evidence he intended it to be a boundary. Nor is there any evidence sufficient to show the predecessor in interest of the plaintiff and defendants acquiesced in the existence of this fence as a boundary. This court established in Myrick v. Peet, 56 Mont. 13, 180 P. 574, that "[t]he burden of proof is always upon the party attempting to show the existence of an agreement fixing the location of a boundary line, and that the boundary so fixed had been accepted and acquiesced in." The position taken in Myrick v. Peet has been repeated and reestablished in Reed v. Walter, 131 Mont. 382, 309 P.2d 1027 and Tillinger v. Frisbie, 132 Mont. 583, 318 P.2d 1079. Anytime an alleged location varies from the true line it affects the ownership of land and proof of such agreed location should be clear and convincing. (Grants Pass Land & Water Co. v. Brown, 168 Cal. 456, 143 P. 754.) The plaintiff has failed to sustain the burden of proof as required by Myrick v. Peet, supra.

It has been held by the California court and we are in agreement therewith, that in order to establish an agreed boun-

dary line, the evidence must show more than mere acquiescence and occupancy for the time prescribed by the statute of limitations; it must go further and show that there was uncertainty in the location of the line, that there was an agreement among the coterminous owners, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith. (Roberts v. Brae, supra; Johnson v. Buck, 7 Cal.App.2d 197, 46 P.2d 771; Phelan v. Drescher, 92 Cal.App. 393, 268 P. 465.)

The second allegation of error raises the question of whether title to the land was established in the plaintiff by adverse possession.

Section 93-2513 R.C.M.1947 provides:

*"Occupancy and payment of taxes necessary to prove adverse possession.* In no case shall adverse possessions be considered established under the provisions of any section or sections of this code unless it shall be shown that the land has been occupied and claimed for a period of five (5) years continuously, and the party or persons, their predecessors and grantors, have, during such period, paid all the taxes, state, county, or municipal, which have been legally levied and assessed upon said land."

The case of Thibault v. Flynn, 133 Mont. 461, 325 P.2d 914, relied upon by the plaintiff, is not applicable. Section 93-2513 does not apply to a claim perfected by adverse possession for the statutory period prior to 1917, the date of its enactment. In Thibault v. Flynn the adverse possession was complete before section 93-2513 requiring the payment of taxes was enacted. Such is not the case here. The fence in question was not built until 1924 or 1925, and the claim of adverse possession by plaintiff is based upon the enclosure and occupancy of the land up to the fence.

Generally speaking, adverse possession is the possession of another's land which, when accompanied by certain acts and circumstances will rest title in the possessor. In determin-

8

ing what constitutes adverse possession courts are practically unanimous in declaring that the possession must be actual, feasible, exclusive, hostile, and continuous for the full period of years. (Lowery v. Garfield County, 122 Mont. 571, 208 P.2d 478; Laas v. All Persons, etc., 121 Mont. 43, 189 P.2d 670.) In addition thereto the party asserting adverse possession in this state, must have paid all the taxes levied and assessed upon the property during the statutory period, Brannon v. Lewis and Clark County, 143 Mont. 200, 387 P.2d 706; Smith v. Whitney, 105 Mont. 523, 74 P.2d 450.

The burden of proving all the essential elements of adverse possession is upon the party alleging it and he must prove that no taxes were levied or assessed against the land or that he has paid all taxes which were levied thereon. (Miller v. Jones, 120 Cal.App. 635, 8 P.2d 881.)

It has already been noted that the parties to this lawsuit stipulated that the defendants, and the plaintiff, paid their taxes as the legal description appears on the respective properties. Thus the plaintiff has failed to establish one of the essential elements of adverse possession and cannot claim title upon that basis. "Payment of taxes to prove title by adverse possession is a positive statutory declaration and must be complied with." (Lowery v. Garfield County, supra.)

There are cases which hold that where a boundary line has been fixed because of the uncertainty of the parties as to the true boundary, the payment of taxes in accordance with the deed description by the party in possession of the land which came to him by reason of such agreement, but is not actually included in the deed description, constitutes a payment upon such land for the purpose of satisfying the statute as regards payment of taxes as a condition of adverse possession. (Raney v. Merritt, 73 Cal.App. 244, 238 P. 767.) However, here there was no agreement to extend the boundary to the fence and it has also been held that in the absence of an agreement extending the boundary to include the strip claimed by adverse pos-

session, the payment of taxes in accordance with deed descriptions does not constitute a payment of taxes on such strips (Blayden v. Morris, 37 Idaho 37, 214 P. 1039; Johnson v. Buck, supra.)

The judgment of the district court is hereby reversed and the injunction upon the defendants ordered removed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, ADAIR and CASTLES concur.