No. 79-88

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

JOHN P. HUGGANS,

Plaintiff and Appellant,

-vs-

DAN WEER,

Defendant and Respondent.

_____

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Ravalli, The Honorable
James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

Tipp, Hoven & Skjelset, Missoula, Montana

For Respondent:

Koch, McKenna & Goheen, Hamilton, Montana

_____

Submitted on Briefs: June 25, 1980

Decided: AUG 27 1980

Filed: AUG 27 1980

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by John P. Huggans from the judgment of the Fourth Judicial District Court, Ravalli County, following a nonjury trial to settle a boundary dispute between John P. Huggans and Dan Weer, adjoining landowners. A sixty-foot wide strip of land is claimed by both Huggans and Weer. In 1978, Huggans petitioned the District Court for a temporary order restraining Weer from entering the disputed strip of land. Huggans also petitioned the District Court to hold a hearing to adjudicate the parties' property rights with respect to the strip of land.

At the hearing in the District Court, Huggans claimed title to the strip of land under the doctrines of adverse possession and agreed boundary. Weer claimed that a recent survey of the land proved that he was the owner of the land and entitled to possession of the land. The District Court found that Weer was the owner of the land. The court concluded that Weer held title to the strip of land because the evidence before the court was legally insufficient to establish Huggans' claim of title by adverse possession or by agreed boundary. We affirm the judgment of the District Court.

John Huggans and Dan Weer own tracts of land in the southeast quarter of Section 7, Township 2 North, Range 20 West, Montana Principal Meridian in Ravalli County, Montana. John Huggans owns the east portion of the southeast quarter section. Dan Weer owns the west portion of the same quarter section. Huggans and Weer are both successors in title to Mr. and Mrs. Charles Rouse, who divided the quarter section, first contracting in 1932 to convey the west parcel to predecessors in title to Dan Weer and later conveying the east parcel to Huggans in 1944. When the Rouses divided

-2-

their land and sold the west portion to Weer's predecessor-in-title, Perry Cooper, no survey was made to determine the exact east-west boundary line, the quarter section sixteenth line. A broken-down fence, rebuilt by Cooper was used as an informal boundary line by Cooper and Rouse. This fence, referred to locally as the "Cooper fence" was built sixty feet west of the sixteenth line. The fence is the cause of the boundary disagreement between Huggans and Weer.

When the Rouses conveyed the east portion of the quarter section to Huggans, the description indicated that the east parcel's west boundary was the Cooper fence. The land conveyed to Huggans was described in the deed as follows:

> "A parcel of land in the southeast quarter of the southeast quarter of section 7, township 2 north, range 20 West, Montana Meridian, described as starting . . . (Measurement by chains and links) . . . thence due west 3 chains 85 links to Cooper fence.. . ."

At the time of the Huggans' deed, however, Rouse had already agreed to sell land that extended about sixty-feet east of the Cooper fence, to Weer's predecessor.

The evidence presented at the District Court hearing indicated that Huggans had actual, continuous and exclusive possession of all of the property in the quarter section east of the Cooper fence, including the sixty-foot strip now in dispute. Although each of the property owners west of the fence, including Weer, testified they knew the fence did not mark the proper boundary, they did not assert their claim to the land east of the fence. From 1944 until 1978, Huggans used all of the property east of the Cooper fence for mink ranching.

In 1978, Weer had his property surveyed. The survey established the location of the sixteenth line and the true Huggans/Weer boundary. Weer notified Huggans of the survey

-3-

results. Weer and Huggans unsuccessfully attempted to negotiate a settlement of their boundary problem. Following an attempt by Weer to reclaim his property by removing the Cooper fence, this litigation began.

The first issue Huggans presented to the District Court and now presented to this Court is whether title to the sixty-foot strip should properly vest in Huggans because of his adverse possession of the strip. The determinative question in regard to this issue is whether Huggans paid the tax levied on the strip of property for a period of five continuous years, a positive statutory requirement under section 70-19-411, MCA. To satisfy this requirement, Huggans offered as evidence his 1966 Ravalli County property tax receipt and the testimony of Mae Chaffin, a Ravalli County appraisal supervisor. This evidence, however, shows that Weer and not Huggans paid the taxes on the disputed strip of land. Ravalli County property tax assessments are made on the basis of the property owner's deed description. The original Huggans deed description contained two descriptions: a general description by quarter section and a measurement description including the reference to the Cooper fence. The description used by the assessor's office in Huggans' case was the government survey quarter section description. Taxes were assessed on Huggans' property extending west to the quarter section sixteenth line and not beyond to the Cooper fence. Huggans' failure to prove he paid taxes on the strip extending west to the Cooper fence, is fatal to his adverse possession claim. Section 70-19-411, MCA; Townsend v. Koukol (1966), 148 Mont. 1, 416 P.2d 532, 536.

The second issue on appeal is whether the District Court erred by not finding that the Cooper fence replaced the sixteenth line as the Huggans/Weer boundary by application of the doctrine of agreed boundary. This doctrine

-4-

holds that two adjacent landowners may move the boundary line of their respective parcels of land by agreement; recognizing a line other than the one described in their instruments of title as their property boundary line. Because this doctrine affects property ownership, proof of any agreed boundary must be clear and convincing. This Court in Townsend v. Koukol, supra, 148 Mont. at 6-7, 416 P.2d at 535, adopted the California rule regarding the doctrine of agreed boundary:

> ". . . in order to establish an agreed boundary line, the evidence must show more than mere acquiescence and occupancy for the time prescribed by the statute of limitations; it must go further and show that there . . . was an agreement among the coterminous owners, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith."

The evidence was not clear and convincing to prove an agreement to make the Cooper fence the east-west property boundary:

> "THE COURT: Mr. Cooper, when you built the fence, did you think it was on the line, the sixteenth line between the two eighties?
>
> "A. Well, I didn't even think a thing about it. Charley (Rouse) and I agreed that was the old line, and we put it right back where it was.
>
> "THE COURT: When you say you agreed it was the old line, did you think that the fence that had been there had marked the sixteenth line between the two eighties? You know, was --
>
> "A. Well, it was -- I don't know; he didn't -- We didn't discuss that at all. We just agreed to put the fence back where it was. That's all.
>
> "Q. (By Mr. McKenna) One other question, sir. Did I understand you correctly to say that one of the main reasons for the fence was for your garden and so forth, right?
>
> "A. Yeah. Yeah, see Charley used that piece in there that Mr. Huggans bought for his night pasture for the cows, and I used that open space there for my garden, see? And we had to make a fence."

A third issue presented by Huggans to this Court on appeal concerns the doctrine of laches. This issue was not raised by Huggans at the District Court hearing or in the pleadings. The long-standing rule of this Court is that we will consider for review only those questions raised in the trial court. Huggans argues that laches is an exception to this rule. We disagree. In Elliston Lime Company v. Prentice Lumber Company (1971), 157 Mont. 64, 483 P.2d 264, we specifically provided that the issue of laches cannot be raised as an issue for the first time in an appeal to this Court.

Except for the scrivener's error in finding of fact no. 11, we find no error in the findings and conclusions of the District Court. Accordingly, the judgment of the District Court is affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____
        Justices

-6-