No. 87-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

WILLIAM M. PERUSICH and MARGERY
E. PERUSICH,

        Plaintiffs and Respondents,

   -vs-

DAVID E. MEIER,

        Defendant and Appellant,

---

APPEAL FROM:  District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark Sullivan, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        John L. Hamner, Butte, Montana

     For Respondent:

        Richardson & Richardson; George W. Richardson, Butte,
Montana

---

Submitted:  Oct. 16, 1987

Decided:  December 22, 1987

Filed:  DEC 22 1987

*Ethel M. Harrison*

---
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

In this action involving disputed ownership of land the District Court for the Second Judicial District, Silver Bow County, Montana, granted plaintiffs William and Margery Perusich (Perusichs) all right, title and interest in the disputed parcel of land. Defendant David E. Meier (Meier) appeals.

We affirm.

The issues presented by the parties can be addressed in one statement:

Whether there was sufficient evidence to allow the District Court to find the Perusichs had acquired all right, title and interest in the disputed property by adverse possession?

This case involves a land dispute between two Butte, Montana, neighbors over the ownership of land described as Tract Two on Certificate of Survey 224 (Cos 224) and the southern portion of lots 19, 20, and 21 on Certificate of Survey 119B (Cos 119B). The land lies within property claimed by Meier, who lives on lot 18, and the Perusichs, who own Tract One. This area is commonly known as the "Crosby" home and consists of 0.36 acres of a 160-acre patented Speir & Bauer Placer Mining Claim. The Perusichs purchased the property from the conservator of the estate of Mae Crosby in September, 1980. The Perusichs claim they and the previous "Crosbys" have been in uninterrupted possession of the home for more than twenty-five years. Evidence was presented that for over fifty years the Perusichs and their predecessors in interest, have occupied the land.

The Meier home and Crosby home are separated by a vacant lot. Both Tract One and Two have been fenced for approximately twenty-five years. The Perusichs, and before

2

them, the Crosbys, had built and maintained improvements on Tract Two. After a trial was held September 4, 1986, the District Court determined the Perusichs had acquired title to Tract Two by adverse possession.

In August, 1982, the Perusichs had a survey, Cos 224, prepared and filed. It shows the Crosby home semi-enclosed in a fence. The property is comprised of two parcels, Tract One and Tract Two and an undedicated alleyway. Cos 224 was based on an unrecorded drawing entitled the "Rocker Townsite" of which the source and date are unknown. It is further unknown whether the Rocker Townsite originated from an actual survey. However, the Rocker Townsite was never formally dedicated and much of the property was acquired by squatters. Because no formal plat ever existed most of the property was described by metes and bounds.

Meier had Cos 119B completed on December 6, 1978. According to 119B lots 19, 20 and 21, claimed by Meier, overlap the Perusichs' land, described as Tract Two in Cos 224, and it is this 30.74 feet-wide, 98.10 feet-long, piece of property which is in dispute. The Perusichs and previous owners maintained a fence around this property, including Tract Two and the alleyway, that was obvious to Meier, yet he never questioned their occupancy until the Perusichs commenced a quiet title action on November 8, 1985. Meier contends that the Perusich fence and buildings are encroachments as shown on Cos 119B.

The title for the Spier & Bauer Placer Mining Claim for both surface and mineral interests was given by the United States government by original patent. A quiet title action was brought by the predecessors in interest in 1970 in which the court decree stated the mineral and surface interest was vested in Frank Benich and James Driscoll as Trustees for West Butte Development, the Anaconda Company, and the Butte,

3

Anaconda and Pacific Railway Company. All of these parties were named in the Perusichs' quiet title action and dismissed after execution of quitclaim deeds.

The Silver Bow County Assessor regularly assessed the Crosby property as lot 3, block 3 of the Rocker Townsite and included all of the improvements within the enclosure. Pat Callaghan (Callaghan), Supervisor of Delinquent Tax Sales for Silver Bow County, testified that Tract Two, as stated in Cos 224, was included in lot 3 and was taxed to the Crosbys and later to the Perusichs. According to Callaghan's notes and tax receipts, submitted as evidence, all tax assessments were paid by the Perusichs and Mae Crosby from 1978 through 1985. Further, the Perusichs presented the tabulation diagram used by the county assessor which showed that the tax valuation included all the improvements on Tract Two. Meier also paid taxes assessed against lots 15 through 23 of block 3 from 1978 through the trial date. The District Court stated in its findings of fact, paragraph 16, that Meier "[m]ay also have paid taxes on property which included Tract Two, but that such tax was improperly assessed . . . and did not include improvements thereon." (Emphasis added.)

Meier testified that the Crosbys were in possession of the property when he moved to Rocker as a three-year-old in 1935. From the record, it is clear the Perusichs and their predecessors in interest have built fences surrounding the property and have made improvements on the land. Both parties exhibit color of title and submitted proof of payment of taxes.

The District Court, after consideration of evidence raised at hearing and supplemental evidence allowed to perfect the record, made the following paraphrased findings:

4

1.   That the Rocker Townsite is an unrecorded plat that overlies portions of the Spier & Bauer Placer in Section 21 T3N R9W MPM Silver Bow County.

2.   That Tracts One and Two constituted the Crosby home and were within the boundaries of the Spier & Bauer Placer and separated by an undedicated alleyway as described in Cos 224 filed for record on August 13, 1981.

3.   All surface rights in the Spier & Bauer Placer contained in Section 21 which were unconveyed by deed prior to February 20, 1970 are inferior to the titles of the Anaconda Company, Frank Benich and James Driscoll, as Trustees for West Butte Land and Development, and the Butte, Anaconda and Pacific Railway Company by court decree, Cause No. 56-309.

4.   The Perusichs continuously occupied Tracts One and Two from August 1981 through 1986 and that prior to that time, Steven J. and Mae Crosby had possession of the property well in excess of twenty-five years sufficient to confer title by prescription upon the Crosbys.

5.   Tract One, Two and the alleyway were enclosed by a woven wire fence and regularly assessed by the Silver Bow County Assessor under the incomplete designation of lot 3 of block 3 of the Rocker Townsite.

6.   The Perusichs paid all taxes legally assessed and levied against Tracts One and Two and the alleyway under the erroneous designation of lot 3 block 3 of the Rocker Townsite for the years 1981 through 1985 and the Crosbys paid all taxes assessed and levied for the years 1976 through 1980.

7.   The Perusichs acquired all claims of right, title and interest in Tracts One and Two by quitclaim deeds from: The Blue Bird Company, Atlantic Richfield, successors of the Anaconda Company, and the Butte, Anaconda and Pacific Railway Company; Rudy E. Endresse and Frank Benich, Trustees for West

5

Butte Land and Development, and the Crosbys and that all of these parties were dismissed as defendants in the quiet title action.

8. The Perusichs and their predecessors held the property openly, notoriously and adversely and only Meier protested the quiet title action even though he was aware of the adverse possession as early as December 6, 1978 when he had Cos 119B done and was therefore estopped pursuant to § 70-19-402, MCA.

9. That Meier may have also paid improperly assessed taxes on the property which included Tract Two.

The court decreed that the Perusichs were entitled to the entire title to surface rights of Tract Two by adverse possession.

We will uphold the District Court unless it is shown there was insufficient evidence to support the court and it abused its discretion in its determination:

> This Court will not overturn the findings of fact of a District Court where they are supported by substantial, though conflicting, evidence unless there is a clear preponderance of the evidence against the findings. State ex rel. Wilson v. Department of Natural Resources and Conservation of State of Montana, Water Resources Div. (1982), Mont., 648 P.2d 766, 772, 39 St.Rep. 1294, 1302. We view the evidence in the light most favorable to the prevailing party. Cameron & Jenkins v. Cameron (1978), 179 Mont. 219, 228, 587 P.2d 939, 944.

Burlingame v. Marjerrison (Mont. 1983), 665 P.2d 1136, 1139, 40 St.Rep. 1005, 1007.

In this case, the evidence supports the finding of the District Court that Perusichs adversely possessed the property at issue in this case.

6

The requirements to establish title by adverse possession have been addressed by this Court on numerous occasions. Castles v. Lawrence (Mont. 1983), 662 P.2d 589, 40 St.Rep. 545; Brannon v. Lewis & Clark County (1964), 143 Mont. 200, 387 P.2d 706. Section 70-19-407, MCA, states:

> When it appears that the occupant or those under whom he claims entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument as being a conveyance of the property in question or upon the decree or judgment of a competent court and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment or of some part of the property under such claim for 5 years, the property so included is deemed to have been held adversely, except that when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract.

For adverse possession to occur, property must be claimed under color of title or by actual, visible, exclusive, hostile and continuous possession during the statutory period of five years. Additionally, the party claiming adverse possession must also have paid the taxes on the property for the full statutory period pursuant to § 70-19-411, MCA. Burlingame, supra, 665 P.2d at 1139-1140; Swecker v. Dorn (1979), 181 Mont. 436, 441, 593 P.2d 1055, 1058.

It is clear from the record that the Perusichs and their predecessors had possession of the property in question. Section 70-19-408, MCA, defines possession as follows:

> (1) For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument or a judgment or decree, land is deemed

7

to have been possessed and occupied in the following cases:

(a) where it has been usually cultivated or _improved_;

(b) where it has been protected by a substantial enclosure. . . (Emphasis added.)

The Perusichs presented evidence that showed the estate of Mae Crosby conveyed to them Tract One, Tract Two and the alleyway. Although there was conflicting evidence presented by Meier, the Perusichs still had legitimate "claim of title . . . upon a written insturment as being a conveyance." The document, a quitclaim deed, was sufficient to create color of title. Sullivan v. Neel (1937), 105 Mont. 253, 73 P.2d 206. Further, there was no evidence that the conveyance was done without good faith.

Adverse possession under color of title is possession based on a written instrument which purports to pass title but which in reality does not. The Court has stated:

". . . for one who holds a land under a written instrument, a statute or a judgment or decree of court which appears to convey or confirm title, but does not do so in fact, holds under 'color of title'; that is to say he holds by virtue of something which gives him a colorable title only . . . "

"'What is meant by _color of title_? It may be defined to be a writing upon its fact professing to pass title, but which does not do it, either from a want of title in the person making it, or from the defective conveyance that is used--a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law.'" Morrison

8

> v. Lind (1915), 50 Mont. 396, 401-409,
> 147 P. 166, 168.
>
> Under Montana law, "An instrument which
> purports to convey land or the right to
> its possession is sufficient color of
> title as a basis for adverse possession
> if the claim is made in good faith."
> (Emphasis added.)

Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 503, 605 P.2d 1107, 1111.

Meier testified that he thought the Crosbys had always owned the property in question. He stated that the Crosbys built the sheds and improvements on the property and enclosed the area in a fence. He further stated that he did not know he was taxed on the disputed property until Cos 119B was completed in 1978. However, even after he was aware that he may have had claim to the property, he made no effort to retrieve it.

We have held that a fenced enclosure is sufficient to satisfy the actual possession requirement under § 70-19-408, MCA. Castles, supra, 662 P.2d at 590; Johnson v. Silver Bow County (1968), 151 Mont. 283, 286, 443 P.2d 6, 8, overruled on other grounds, 593 P.2d 1055, 1058. The establishment of the fence in this case clearly satisfies the enclosure requirements and this conclusion is further buttressed by the improvements made to the property. The improvements included a large shed, a smaller shed, referred to as a "doll house," and a dog kennel.

The District Court found that the Perusichs and predecessors held the property "[o]penly, notoriously and adversely, as against all persons." The evidence supports this finding. The fence and improvements are sufficient to satisfy this requirement. The holding was open, it was not masked to deceive Meier. Both Perusichs and the Crosbys openly

9

showed their intention of possessing Tract Two. Martin v. Randono (1978), 175 Mont. 321, 573 P.2d 1156, appeal after remand, 623 P.2d 959.

The property was held adversely and hostile to Meier's interest. The Perusichs' claim was adverse to the extent that Meier gave no privilege or license to them or their predecessors to possess Tract Two. Taylor v. Petranek (1977), 173 Mont. 433, 437, 568 P.2d 120, 122. Yet Meier acquiesced in the use, even after he was aware of a possible claim. The use by the Perusichs and their predecessors clearly put Meier on notice that they were adversely holding the land. This Court has defined "hostile" to mean "[a]n invasion of the owner's possession by the claimant without the owner's permission and in violation of the owner's right of property." Price v. Western Life Insurance Co. (1943), 115 Mont. 509, 514, 146 P.2d 165, 167. In Price, this Court also stated that "adverse" meant "having opposite interests, having interests for the preservation, of which opposition is essential." Price, supra, 146 P.2d at 167. The land was held in violation of Meier's interests once the Crosbys fenced and improved the area, even though he was unaware that he had an interest until 1978.

Finally, although it was contested and arguably proven by Meier that he also paid taxes on Tract Two, it was proven by the Perusichs that they, and the Crosbys prior to them, paid, not only the underlying property tax but also the tax on the improvements. Section 70-19-411, MCA, mandates that a claimant pay the taxes levied for adverse possession to occur:

> In no case shall adverse possession be considered established under this code unless it shall be shown that the land has been occupied and claimed for a period of 5 years continuously and the

10

> party or persons, their predecessors, and grantors have during such period <u>paid</u> <u>all</u> <u>the</u> <u>taxes</u>, state, county, or municipal, which have been legally levied and assessed upon said land. (Emphasis added.)

This has generally been the aspect which bars most parties attempting to adversely possess land. Huggans v. Weer (1980), 189 Mont. 334, 336-337, 615 P.2d 922, 924. However, the Perusichs sufficiently proved that they and their predecessors <u>paid</u> <u>all</u> taxes for the mandated period and therefore satisfied this burden. Townsend v. Koukol (1966), 148 Mont. 1, 8, 416 P.2d 532, 537. The District Court appropriately mentioned that both parties may have paid the taxes on the property. However, not only did the Perusichs prove payment of <u>all</u> <u>taxes</u>, they also showed that they were the party that possessed the property in an open, notorious, hostile and adverse manner.

There was substantial credible evidence to support the District Court's findings of fact, conclusions of law and decree.

Affirmed.

_____
                    Justice

We concur:

_____
       Chief Justice

_____

_____

_____
       Justices

11